IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHILDRENS HOSPITAL AND RESEARCH CENTER AT OAKLAND, a California non-profit corporation public benefit corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>CLARK COUNTY SELF-FUNDED, an entity of unknown form, and DOES 1 to 25, inclusive,<br><br>    Defendants.<br>_____/ | No. C 09-01603 JSW<br><br>**ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION FOR TRANSFER** |

Now before the Court is Defendant's motion to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, to transfer the case to the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1404(a). On July 9, 2009, this Court reserved ruling on both motions and ordered limited jurisdictional discovery and additional briefing. Both motions are now ripe for consideration. The Court finds the matter suitable for disposition without oral argument. Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby DENIES Defendant's motion to dismiss and GRANTS Defendant's motion for transfer.

**BACKGROUND**

Plaintiff Children's Hospital and Research Center at Oakland ("Plaintiff" or "Hospital") is a non-profit public benefit corporation organized and existing under the laws of California. Defendant County of Clark, Nevada (erroneously named in the complaint as Clark County Self-

Funded, hereinafter "Defendant" or "County") is a political subdivision of the State of Nevada. The contract dispute arises out of a course of dealing between the parties wherein the Hospital treated K.S., a minor girl, over a period of more than two years and expected the County to reimburse it for medical services rendered. Plaintiff alleges that K.S. was insured under the County's Self-Funded Health Benefit Plan ("Plan") as a ward of a court-appointed legal guardian, who is an insured employee of the County. The amount in controversy exceeds the jurisdictional amount of $75,000 and the parties are completely diverse. The complaint for breach of contract and *quantum meruit* was removed to this Court from the California Superior Court for the County of Alameda.

The County moves to dismiss the complaint for lack of personal jurisdiction or, in the alternative, for an order transferring this matter to the United States District Court for the District of Nevada.

**A.     County's Self-Funded Health Benefit Plan.**

Defendant County is a political subdivision of the State of Nevada. (Declaration of Ed Finger ("Finger Decl.") at 2:4.) The County is a legal entity with the capacity to sue and be sued, to purchase, sell and hold real property, to enter into contracts, to levy taxes, to issue general obligation bonds, and to make expenditures for the provision of public service. (*Id.* at 2:7-9.) The County has no branch offices, telephone listings, or mailing addresses in the state of California. (*Id.* at 3:10-12.) The County also has no bank accounts or other tangible personal or real property in California. (*Id.* at 3:10-14.) No member of the County's governing board and none of its senior executive officers reside or are domiciled in California. (*Id.* at 3:5-6.)

In contrast to the County's general operations, the Self-Funded Benefit Plan crosses state lines. The County operates the Plan as a service akin to health insurance for eligible employees of the County and other affiliated public entities. (Declaration of Pamela Theriault ("Theriault Decl.") at 2:3-12.) The County has a contract with two related entities: Sierra Health Services, Inc. (although the complaint identifies a related entity, Sierra Health and Life Insurance Company, Inc.), and Sierra Health-Care Options, Inc. (hereinafter, collectively,

1  "Sierra"). These entities provided slightly different services for the County. Sierra Health
2  Services, Inc. acted as a "utilization agent" and would certify a procedure as a medical
3  necessity. (*Id.* at 3:19-24.) Sierra Health-Care Options, Inc. is a Preferred Provider
4  Organization ("PPO") located in Nevada, through which County employees can access a
5  discount provider network. (*Id.* at 4:20-21.)

6  If a covered employee uses one of Sierra's providers, the County's payment will satisfy
7  the entire bill; if the employee chooses another provider who does not have a PPO contract, the
8  County will pay a certain portion of the bill. (Supplemental Declaration of Pamela Theriault
9  ("Theriault Supp. Decl.") at 2:23-3:1.) Sierra also has authority to reach out to out-of-network
10 providers to see if they are willing to pay the in-network contracted price. (Pl. Supp. Opp., Ex.
11 H (Deposition of Pamela Theriault ("Theriault Depo.") at 113:7-14).) The majority of Sierra's
12 network providers are located in Nevada, but it also has 23 network providers located in
13 California. (Pl. Supp. Opp., Ex. L (SHPPO 0175).) Sierra also has discount arrangements with
14 an unknown number of "centers of excellence" in California which are not part of Sierra's PPO
15 network. (Pl. Supp. Opp., Ex. H (Theriault Depo. at 102:5-18).)

16 In addition to Sierra, the County uses other third party administrators ("TPA") to
17 negotiate pricing and service under the Plan. One TPA that the County uses to negotiate pricing
18 is Loomis Company ("Loomis"). (*Id.* (Theriault Decl. at 4:14-16).) The County also used
19 another TPA, American Benefit Plan Administrators ("ABPA"), which may have relevant
20 information but was not identified by Plaintiff Hospital. (*Id.* (Theriault Decl. at 4:5-13).) The
21 County's TPAs also have authority to negotiate individual letters of agreement ("LOA") with
22 non-network providers. In the last four years, the County has dealt with an increasing number
23 of California providers and paid more each year to them. In 2005, the County paid $58,744.20
24 to six different California providers. (Pl. Supp. Opp. at 14:5, Ex. L (CCSF 0169-0192).) In
25 2008, the County paid $1,100,724.70 to 49 different California providers. (*Id.* at 14:19, Ex. L
26 (CCSF 0169-0192).) However, these payments total only about 1.6% of the total Plan
27 expenditures. (Theriault Supp. Decl. at 3:24-25.) In addition, less than 0.5% of the Plan's
28 members received care in California. (*Id.* at 4:12-13.)

**B.    K.S.'s Treatment.**

Between March 30, 2006 and July 24, 2008, Plaintiff Hospital, located in Oakland, California, provided K.S. with treatment culminating in a bone marrow transplant. The treatment consisted of approximately 107 separate billable patient claims, which the Hospital billed to the Plan.[1] The County and the Hospital allegedly entered into several agreements all relating to K.S.'s care. Because the Hospital is a non-network provider, the agreements required individual LOAs and authorizations of care. The agreements were allegedly entered into by various TPAs and other agents of the County.

Sierra, on behalf of the County, allegedly negotiated the first agreement in March, 2006 ("the 2006 Agreement").[2] Under this agreement, the County potentially made up to 43 partial payments of the claims at issue.[3] When K.S. went to the Hospital for the bone marrow transplant, SHO provided a "utilization review" of that care and authorized 74 days of inpatient care. (Pl. Supp. Opp., Ex. I.) For services rendered prior to January 1, 2008, the County either paid the claims in part or denied them. (Declaration of Michelle Smith-King ("Smith-King Decl.") at ¶ 6, Ex. C.) The denials were based on the belief that K.S. may have been covered under her father's medical insurance. (*Id.* at ¶ 7, Ex. D.)

After determining that K.S. was not covered, the County's TPA, Loomis, negotiated another agreement ("the 2008 Agreement") to resolve the underpayment of K.S.'s claims. It appears that this agreement may have been negotiated through Loomis' repricing agent, Total Claims, Capture & Control ("TC3"). (Pl. Supp. Opp., Ex. M.) TC3 is a Delaware corporation with a principal place of business in Costa Mesa, California. (*Id.* at Ex. L.) This agreement was

---

[1] Plaintiff originally stated that the treatment consisted of 39 separate billable patient claims and in its supplemental brief stated that it found an additional 68 billable patient claims. However, the evidence is unclear, disorganized, and indicates that there may have been fewer claims.

[2] Plaintiff originally referred to this agreement as the "2005 Agreement" based on the mistaken belief that it was entered into in 2005. (Pl. Supp. Opp. at 4:5-14.)

[3] Plaintiff originally stated County made 13 payments and in its supplemental brief stated that it found an additional 30 payments. However, the evidence is unclear, disorganized, and indicates there may have been fewer payments.

4

designed to negotiate a discount for K.S.'s bone marrow transplant because the procedure was particularly expensive. (*Id.* at Ex. M.) The Hospital expected Loomis to pay the amount negotiated in the 2008 agreement, but Loomis was not authorized to do so because the County had initiated an audit of the claim. (Pl. Supp. Opp., Ex. H (Theriault Depo. at 74:5-10).) After auditing the claim, the County retroactively terminated K.S.'s coverage, effective January 1, 2008. (*Id.* at 85:20-86:12.) The County instructed Loomis to make no further payments and to request refunds of amounts already paid. (*Id.*)

In addition, while not a subject of this suit, it appears that the County entered into another LOA with Crescent Healthcare, Inc. ("Crescent") of Anaheim, California relating to K.S.'s care in May 2008. (Pl. Supp. Opp., Ex. J.)

The Court will address additional facts as necessary in the remainder of this Order.

## ANALYSIS

**A.  The County's Motion to Dismiss is Denied.**

The County moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. The plaintiff bears the burden to establish personal jurisdiction. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). Where the facts are not directly controverted, a plaintiff's version of the facts is taken as true. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). Likewise, the Court must resolve "'conflicts between the facts contained in the parties' affidavits ... in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (quoting *AT&T*, 94 F.3d at 588).

"Personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (citing *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir. 1996)). Because California's long arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under California law and federal due process are the same. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

5

Due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state. The overriding constitutional principle is that maintenance of an action in the forum must not offend "traditional conception[s] of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). The defendant's "conduct and connection with the forum State" must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

### 1. The Court Lacks General Jurisdiction Over The County.

"A defendant whose contacts with a state are 'substantial' or 'continuous and systematic' can be haled into court in that state in any action, even if the action is unrelated to those contacts." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)). As the Ninth Circuit explained in *Bancroft & Masters*, this is a "fairly high" standard which "requires that the defendant's contacts be of the sort that approximate physical presence" in the state. *Id*.

Plaintiff argues that the agreements related to K.S.'s care, along with other forum-related activities are sufficient for this Court to exercise general jurisdiction. While the County pays more than $1 million each year to almost 50 unique California providers, it is still a very small portion of its overall expenditures. Additionally, the Sierra PPO network has agreements with 23 California providers and the County's TPAs routinely negotiate LOA's with out of network providers. (Pl. Supp. Opp., Ex. J.) However, the number of California providers pales in comparison to the number of Nevada providers. On this basis, the Court finds the County's contacts with California are not so "substantial" or "continuous and systematic" so as to "approximate physical presence in the state." *See Bancroft & Masters*, 233 F.3d at 1086. Accordingly, the Court lacks general jurisdiction over the County.

6

### 2. The Court Has Specific Jurisdiction Over The County.

Specific jurisdiction over a defendant exists where: (1) the defendant has purposefully directed his or her activities at residents of the forum state or the forum state itself; (2) the plaintiff's claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger,* 374 F.3d at 802; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-77 (1985). "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Schwarzenegger*, 374 F.3d at 802 (internal citation omitted). "On the other hand, if the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Menken*, 503 F.3d at 1057 (internal quotations and citations omitted). The Ninth Circuit has noted that the "purposeful availment" prong, "[d]espite its label ... includes both purposeful availment and purposeful direction. It may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

The Hospital relies on *Farmers Insurance Exchange v. The Portage La Prairie Mutual Insurance*, 907 F.2d 911, 914 (9th Cir. 1990), for the proposition that insurers purposefully avail themselves of a forum state wherever an insured event occurred within the territorial limits of the policy. The plaintiff in *Farmers* held an automobile insurance policy that expressly covered the insured anywhere in Canada or the United States. *Id.* at 913 n.2. The insurer's ability to control where they are subject to suit through jurisdictional limits in policy coverage was pivotal to the Court's analysis in *Farmers*. *See id.* at 914. Furthermore, the Court noted that automobile liability suits typically occur where the accident took place, whereas health insurance policies are *typically* sued where the insured resides. *Id*. at 913-14. However, while *Farmers* is not controlling in this context, this Court still finds that the County purposefully directed its activities at California and the Hospital's claim arises out of, and is related to, those activities.

7

The County claims that it only entered into a single transaction, with a single provider for K.S.'s care. The County argues that, even if it entered into different agreements over a period of time, such conduct constituted a single transaction because all the agreements related to K.S.'s care. The County also asserts that "the contract being sued on is a non-fact – it doesn't count." (Def. Supp. Br. at 9:14.) The Court does not agree. A single contract is insufficient, *by itself*, automatically to establish minimum contacts, *see Burger King*, 471 U.S. at 478, but that does not make the existence of the contract irrelevant. Furthermore, the County and the Hospital have entered into several contracts in this case. At a minimum, the County has entered into both the 2006 Agreement and the 2008 Agreement with Hospital, and potentially another LOAs with Crescent relating to K.S.'s care. (Compl., Ex. A; Pl. Supp. Opp., Exs. M., J.) Furthermore, the County made numerous payments to the Hospital over several years, all relating to K.S.'s care. (Pl. Supp. Opp., Ex. K; Smith-King Decl., Ex. D.)

The County's primary argument is that it only contracted with vendors with offices in Nevada, namely Loomis and Sierra. The County asserts that, because it purchased services *en bloc* based on the companies' expertise in the areas at issue, that those companies constitute independent contractors, not agents. The County argues that Sierra and Loomis were acting independently from the County and, as a result, should not be able to bind the County to California's jurisdiction. As a result, the County argues that, even if those vendors directed their activities to California and entered contracts with California residents, the County itself did not.

The facts indicate otherwise. The County authorized Loomis to use TC3 to negotiate a price reduction which formed the basis of the 2008 Agreement. (Pl. Supp. Opp., Ex. M.) However, the County prevented Loomis from paying out on the 2008 Agreement because the County initiated an internal audit. (Pl. Supp. Opp., Ex. H (Theriault Depo. at 74:5-10).) Any claim greater than $10,000 is automatically referred to the County for an audit. (*Id.*) Based on the amount of K.S.'s claim, the County conducted an independent audit and retroactively cancelled coverage. (*Id.* at 85:20-86:12.) The County exercised control over Loomis. Furthermore, Loomis negotiated contracts from California and used TC3, which has its

8

principle place of business in California, to negotiate one agreement. (Pl. Supp. Opp., Exs. L, M.)

The County's exercise of control over Sierra is less clear. While there is no evidence of the County issuing direct orders to Sierra, it authorized Sierra to enter into contracts and make payments on behalf of the County. (Pl. Supp. Opp., Ex. H (Theriault Depo. at 113:7-14).) Sierra entered contracts through its PPO network as well as separate individual LOAs with non-network providers. Sierra's PPO plan, which the County subscribes to, specifically covers treatment by 23 network providers in California, as well as other "centers of excellence" located in California. (Pl. Supp. Opp., Ex. L (SHPPO 0175), Ex. H (Theriault Depo. at 102:5-18).) The County claims that the PPO network is irrelevant to the specific jurisdiction analysis because the Hospital was not in the PPO network and, therefore, the PPO network is not sufficiently related to the Hospital's claim. While the PPO network may be tangentially related to the claims at issue, Sierra's negotiations and the LOA regarding K.S.'s care are directly related to the subject claim. The County directly authorized such negotiations and LOAs and also made numerous payments regarding K.S.'s care to the Hospital.

The Court finds that the County has purposefully directed its activities at California, and those activities are related to the Hospital's claim. The first two prongs of the specific jurisdiction test have been satisfied. The burden now shifts to the County to demonstrate that it would be unreasonable to exercise jurisdiction over it. *See Menken*, 503 F.3d at 1057.

To determine whether exercising jurisdiction is unreasonable, the Court considers the following factors: "(1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum." *Bancroft & Masters*, 223 F.3d at 1088. The County argues that it has not purposefully interjected itself into California. As addressed above, the County has entered into several contracts with the Hospital regarding K.S.'s care. The County also used companies operating

9

1  out of California to negotiate deals with California companies. Based on these facts, the Court
2  finds that the County has purposefully interjected itself into the state of California.
3  Finally, the County argues that convenience and efficiency and suitability of an
4  alternative forum also weigh against any finding of reasonableness. The County asserts that
5  inconvenience to its witnesses should render the exercise of jurisdiction unreasonable. The
6  Court is not persuaded. While one factor is the most efficient resolution, another is the
7  "*plaintiff's* interest in convenient and effective relief." *Bancroft & Masters*, 223 F.3d at 1088
8  (emphasis added). In essence, the County attempts to argue that the forum is inconvenient.
9  However, the unreasonableness prong is used only to prevent jurisdictional rules from being
10 "employed in such a way as to make litigation so gravely difficult and inconvenient that a party
11 unfairly is at a severe disadvantage in comparison to his opponent." *Burger King*, 471 U.S. at
12 478 (internal citations omitted). By contrast, "a defendant claiming substantial inconvenience
13 may seek a change of venue." *Id.* at 477. Here, the County has not met its burden of showing
14 that the exercise of jurisdiction is unreasonable.

15 **B.    The County's Motion for Transfer is Granted.**

16 In the alternative, the County seeks to transfer this action to the District of Nevada
17 pursuant to 28 U.S.C. § 1404. A district court has discretion "to adjudicate motions for transfer
18 according to an 'individualized, case-by-case consideration of convenience and fairness.'"
19 *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376
20 U.S. 612, 622 (1964)). In order for a district court to transfer an action under Section 1404, a
21 court must make the following two findings: (1) that the transferee court is "one where the
22 action might have been brought," and (2) "that the convenience of the parties and witnesses in
23 the interest of justice favor transfer." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir.
24 1985) (internal quotations omitted). As the moving party, the County bears the burden of
25 showing that the inconvenience of litigating in this forum favors transfer. *See, e.g.*, *E. & J.*
26 *Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994). There is no dispute in
27 this case that the Plaintiff could have brought this suit in the District of Nevada. Accordingly,
28 the County has met its burden on this prong.

10

To determine whether the County has met its burden on the second prong, the Court considers the following factors: Plaintiff's choice of forum; convenience of the parties and witnesses; ease of access to sources of proof; local interest in the controversy; familiarity of each forum with the applicable law; and relative congestion in each forum. *See Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508-09 (1947); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

### 1. Plaintiff's Choice of Forum.

Typically, a court should give a plaintiff's choice of forum great deference unless the defendant can show that other factors of convenience clearly outweigh the plaintiff's choice of forum. *Decker Coal*, 805 F.2d at 843. The fact that jurisdiction is proper in the Northern District of California is not dispositive of the issue of whether transfer is appropriate under Section 1404(a). *See* 28 U.S.C. § 1404(a). The deference accorded to the plaintiff's chosen forum should be balanced against both the extent of a defendant's contacts with the chosen forum and the plaintiff's contacts, including those relating to a plaintiff's cause of action. *See Pacific Car and Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968). "If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, a plaintiff's choice is only entitled to minimal consideration." *Id.*

Here, the Hospital treated K.S. in Oakland, California, but the dispute concerns contracts entered into between the Hospital and the County. While the County purposefully directed its activities at California, it is not clear that the operative facts have all occurred within the Northern District of California. For example, TC3's principle place of business is located in Costa Mesa, which is in the Central District of California. (Pl. Supp. Opp., Ex. L.) While K.S.'s treatment occurred in the Northern District of California, all of the negotiations occurred with companies negotiating on behalf of the County that are located either in Nevada or in the Central District of California.

As the deference accorded to a plaintiff's choice of forum decreases, defendant's burden to upset the plaintiff's choice of forum also decreases. *Chodock v. American Economy Ins. Co.*,

11

2005 WL 2994451, *3 (D. Ariz. 2005) (quoting *Chrysler Capital Corp. v. Woehling*, 663 F. Supp. 478, 482 (D. Del. 1987)). On balance, the Court concludes that, while the Hospital is a forum resident, its choice of forum is entitled to less deference because the facts giving rise to this dispute did not occur within the Northern District of California. On this record, the Court finds this factor weighs slightly against transfer.

### 2. The Convenience of the Parties and Witnesses.

In addition to considering plaintiff's choice of forum, courts take into account the relative convenience to all the parties and their witnesses. *See Decker Coal*, 805 F.2d at 843 (citing *Gulf Oil Corp.*, 330 U.S. at 508). The County argues that it would be more convenient to litigate this matter in Nevada, because all of the relevant witnesses and documents are located there. Also, the County contends that many of the witnesses are third party witnesses. For example, the County has identified twelve people which have knowledge about the dispute. (Theriault Supp. Decl. at 7:1-17). Of those witnesses, at least eight reside in Nevada, and none reside in California. *Id.* Furthermore, eleven witnesses are third party witnesses and, although some work for Loomis and Sierra, the County cannot directly compel their attendance.

Additionally, the County contends that the burden on a family whose daughter has recently undergone a bone marrow transplant is significant. (Def. Supp. Br. at 14:18-24 (citing *Buckman-Falduti v. Kindercare Learning Center*, 2009 U.S. Dist. LEXIS 11030 *5-7 (N.D. Cal. Feb. 2, 2009)).) In *Buckman-Falduti*, however, the sick child was a plaintiff in the lawsuit and the dispute concerned birth defects allegedly caused by an illness the mother contracted while working for the defendant. 2009 U.S. Dist. LEXIS 11030 at *2. In that case, it was reasonable to assume that the mother and/or child would be required to attend court proceedings and that their injuries made such travel precarious. Here, while arguing that the Hospital personnel are unnecessary witnesses, the County does not challenge the medical appropriateness of the care. (Def. Supp. Br. at 14:15-17.) Accordingly, it is unlikely that K.S. or her family would be required to travel to California to testify as witnesses. As a result, while the Court does not dismiss any potential impact on K.S. and her family, this fact alone is not controlling.

The Hospital only identifies that TC3 has an office in Costa Mesa and that Sierra was acquired by UnitedHealth Group, a Minnesota-based company. The Hospital has failed to identify *any* relevant witnesses located in California. Furthermore, even if some witnesses were located in Minnesota, the Court does not consider the convenience of parties and witnesses who are located outside both the current and transferee fora. *See Ricoh Co. Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 484-85 (D. N.J. 1993).

The County will benefit from transfer and the Hospital will not be significantly inconvenienced by transfer. On balance, the convenience of the parties and witnesses weighs heavily in favor of transfer.

### 3. The Ease of Access to Sources of Proof.

Access to evidence is another factor that may favor transfer. *Gulf Oil Co.*, 330 U.S. at 508. The County states that its documents and the documents of Loomis and Sierra are located in Nevada. By contrast, Plaintiff has not identified any third parties in California from whom it would be difficult to subpoena documents if this case is transferred to Nevada. Therefore, on balance, this factor weighs in favor of transfer.

### 4. The Local Interest.

Another consideration in a decision to transfer venue is the local interest in having localized controversies decided at home. *Gulf Oil*, 330 U.S. at 508. The Hospital contests that California has a significant local interest in adjudicating this dispute because the dispute may implicate state law, including a prohibition on postclaims underwriting. The Hospital claims that the "systematic integrity of California's insurance and health care regulation schemes would be undermined if out-of-state courts are allowed to issue rulings interpreting how actors in that field should govern themselves." (Pl. Opp. at 15:8-11.) However, the Hospital has not shown that the Nevada District Court is unable to apply California law. Indeed, district courts routinely apply out of state law.

California also has a strong interest in deciding controversies involving its citizens. *See Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 771 (9th Cir. 1991) (finding that California has an interest in having its citizens compensated for torts committed against

13

them). However, as discussed above, the contracts in this case were generally negotiated and executed across state or district lines. Therefore, California's interest in adjudicating disputes involving its citizens and disputes that occurred in California cannot be any greater than Nevada's similar interests.

The County also argues that Nevada has a significant interest in resolving this dispute because it involves a government entity and political subdivision of Nevada. Furthermore, the cost of litigation, as well as any potential judgement will ultimately be paid for by Nevada taxpayers. On balance, this Court finds this factor weighs slightly in favor of transfer.

**5.    Familiarity of Each Forum with the Applicable Law.**

The parties dispute whether the District of Nevada has the appropriate expertise to handle this matter because it may involve California law. Although this Court may be more familiar with the relevant law, there is nothing to indicate that the District of Nevada cannot adequately apply California law. Accordingly, this Court finds that this factor only weighs slightly against transfer.

**6.    Relative Court Congestion in Each Forum.**

Because neither party has demonstrated that either forum more or less congested, the Court finds this factor to be neutral.

## CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss is DENIED. The Court finds that Defendant has met its burden to demonstrate that the relevant factors that the Court must consider, including convenience of witnesses and access to evidence, weigh in favor of transfer. Accordingly the Court GRANTS Defendant's motion for transfer. The Clerk is directed to transfer this case forthwith to the United States District Court for the District of Nevada.

**IT IS SO ORDERED.**

Dated:   March 8, 2010

JEFFREY S. WHITE  
UNITED STATES DISTRICT JUDGE

14